GILLESPIE v. The LEONARD. See Case No. 8,256.

## Case No. 5,435.

### GILLESPIE v. McKNIGHT et al.

[3 N. B. R. 468 (Quarto, 117).][1]

District Court, S. D. Mississippi. 1870.

BANKRUPTCY—FRAUDULENT CONVEYANCES — DEED OF TRUST FOR BENEFIT OF BANKRUPT'S WIFE.

1. In Mississippi, husband gave promissory note to the trustee of wife, for alleged balance on account stated between them, growing out of the use of the separate personal and real property of the wife, and executed a deed of trust on certain land of the husband to secure payment of the note, and subsequently went into voluntary bankruptcy. On petition of assignee and a secured creditor, held, the said conveyance must be held to be fraudulent and void as to existing creditors at the time it was made.

2. Semble. even if the wife's claim was valid under the laws of Mississippi, the effect of the conveyance would be to delay and hinder creditors, and enable the debtors to obtain an inequitable advantage over them, and so void.

In equity.

HILL, District Judge. This cause is considered as on bill, supplemental bills, answers, and proofs, from which it appears that on the 5th day of January, 1856, said Theodore McKnight, with Hamilton McKnight and W. F. Cain, as his sureties, executed their note to Sarah Gillespie, for the sum of one thousand dollars, with ten per cent. interest, payable twelve months thereafter, the same being for borrowed money. Upon this note the interest was paid annually, up to the 1st day of January, 1860, together with two hundred dollars of the principal debt. On the 23d day of May, 1866, said Theodore and Hamilton McKnight entered in the office of the clerk of the circuit court for the county of Amite, an office confession of judgment for the sum of eight hundred and thirty-two dollars and twenty-five cents upon said note, which was by the said court confirmed on the 2d day of June thereafter. Upon this judgment an execution was issued, and on the 17th day of January, 1868, levied upon the lands mentioned in the bill. The said judgment was, soon after its rendition, enrolled in Amite county, in the proper office. On the 29th day of February, 1868, said Theodore McKnight filed his petition in bankruptcy, and was soon thereafter adjudged a bankrupt thereon. On the 17th day of March, 1866, said Theodore McKnight executed his note to John F. Hamilton, as trustee for his wife, Hannah McKnight, for the

1 [Reprinted by permission.]

sum of three thousand six hundred and sixty-seven dollars and seventy cents, payable two years thereafter; and at the same time executed to said John F. Hamilton a deed of trust upon the lands mentioned in the bill, to secure the payment of said note, being in all nine hundred and twenty acres, and so far as the proof shows, was all the estate then owned by said Theodore, liable to execution. The deed of trust recites that the consideration of the note was the amounts which said Theodore had received from the proceeds of sales of crops jointly raised by himself and his wife upon her lands, and by the labor of their slaves, from the time of their marriage, and the proceeds of sales of the separate property of said Hannah, received by him, and used in his own business. stating the amounts so received for each year, from 1856 to 1862, inclusive, being in all seven years, and making the amount above stated three thousand six hundred and sixty-seven dollars and seventy cents.

Mrs. Gillespie proved her claim as a secured debt with lien upon said lands, and filed this bill, praying that said deed of trust be set aside as fraudulent and void, and that said lands be sold, and the proceeds, so far as necessary, applied to the payment of said judgment. After the filing of this bill, Hamilton McKnight, who was solvent, and bound for the payment of said judgment, paid it in full to Mrs. Gillespie, and filed his petition, praying to be subrogated to the rights of Mrs. Gillespie in said judgment, and in the proceedings in this cause. The assignee in bankruptcy of said Theodore. also filed a petition, praying to be admitted as a party complainant upon the part of the general creditors of the said Theodore. The answer of Theodore and wife admits the judgment and the execution of the trust deed, but denies the fraud charged; also denies that Hamilton McKnight was the surety of Theodore; but states that they were joint makers, and that Hamilton McKnight was bound to pay one-half thereof. The proof, however, shows him only to be surety. The answer further charges that Hamilton McKnight is indebted to the estate of Theodore in a larger amount than the amount due on the judgment. Hamilton McKnight denies that he is indebted to Theodore in any sum, but admits that they had been copartners in a mercantile establishment, and the accounts thereof remain unsettled between them. The suretyship of Hamilton McKnight being established, and he having paid the amount due to Mrs. Gillespie upon the judgment, his right to be subrogated to her rights in the judgment, and in this cause as a means of enforcing it, cannot be successfully questioned; but he can claim no greater rights than he would be entitled to were he the original complainant, and consequently must, before receiving the amount due upon the judgment, account for any balance that may be found due to the estate of Theodore Mc-

Knight. and to ascertain which, this question must be referred for an account.

The next and more important question is, was this accounting between Theodore and his wife, and the conveyance of the land to the trustee. fraudulent and void, as against the creditors of Theodore, existing at the time the same was made? By the common law, the husband, upon the marriage, became vested with the title to the personal estate of the wife, as well as to that acquired during coverture, also the rents and profits of her real estate, consequently the support of the wife and family devolved entirely upon him. Such was the law in this state until the passage of the married woman's law in 1839 [Laws Miss. p. 72, c. 46]. which secured to her, free from the debts and liabilities of the husband, her personal property, owned at the marriage, or which might come to her during coverture, provided it was not received from her husband, but left the rents and profits of her estate, real and personal, to the husband, as before, except the increase of her slaves, which went to the wife. By the act of 1846 [Laws Miss. p. 152, c. 13], the wife's rights and liabilities were enlarged, so as to secure to her the rents of her lands and the products of the labor of her slaves; but rendering such income liable for supplies purchased for the use of her slaves or plantation. Thus the law stood until the adoption of the Code of 1857, upon that subject, and upon a proper construction of which the decision of the question now presented depends. Article 1, § 5, c. 40, p. 336, secures to the wife the rents, issues, profits, and increase of her real and personal estate, and provides further, that if the husband shall purchase property with the money of the wife, and take the title in his own name, he shall hold it only as trustee for the wife; but with the limitation, that if the husband obtain credit in consequence of the possession of such property, such trust, as against such creditors, shall be void. The next article renders her separate estate liable for contracts made by either herself or husband for the benefit of her separate estate, and also for supplies furnished for herself and her children, including household furniture, carriage. horses, etc., also for the education of the children; thus throwing upon her a portion of the burden of her support and that of her children, the husband being thus deprived of the means for that purpose, given him by the common law. The 28th article, after making provision for the descent and distribution of the estates of married women, makes this proviso: "Provided. that neither the husband nor his representatives shall be liable to account to the wife or her representatives for the rents, profits. or income arising from the separate property of the wife, after the expiration of one year from the time of receiving the same." Taking the different articles of this section together, it is evident that the income

of the wife's estate, so far as necessary, should be used jointly with that of the husband in the support of the family; and further, that the wife should not, by permitting the husband to use and control the income of her estate as his own, obtain credit, and yet deprive the creditor of the means of payment upon which he had a right to rely.

The presumption, therefore, is, that if the wife permitted the husband to receive the income of her estate without accounting for the same for a longer period than one year from its reception, that it was used for the support of the family, or that she was willing for him to enjoy the benefit of it in his business, without requiring him otherwise to account for it, and that the same should remain liable for his debt. The rights of all parties must be governed by the laws in force when they accrue. Mrs. McKnight, by not calling her husband to account for so long a period, lost her right to call him or his representatives, were he dead, to account for the income stated. The creditors, who either gave credit or indulgence, had a right to look to such income, or to the property of the husband acquired by its use, for the payment of their demands. The accounting for such income after the title had thus become vested in the husband, was a gift by the husband to the wife, and this, under the law as then in force, he could not do to the prejudice of his creditors, if indeed, it could be legally done at all, under the proviso: "Provided it is not received from the husband." To hold this conveyance valid as against the creditors of the husband, would be to give to the wife all the benefits of her estate, and relieve her from all the liabilities and burdens which the law imposed upon it; it would be to charge the entire expense of the support of the wife and her children to the husband, to be discharged at the expense of his creditors.

Admitting that the claim of the wife was valid, the amount of property conveyed, which was all that was subject to execution, so far as the proof shows, the length of time given for payment, the relationship between the parties, and all the circumstances, it would be difficult to come to any other conclusion than that it was a conveyance to hinder and delay other creditors, and to obtain an inequitable advantage over them. The act of 1867 [Laws Miss. p. 725, c. 496], entitled "An act to amend the law heretofore in force respecting the rights of married women," has no application to this case, having been passed subsequent to the conveyance from Theodore McKnight to the trustee, and only applying to rights accruing after its passage. The limitation of one year made in Code 1857 was not intended as a limitation of a suit brought by the wife against the husband, but as a limitation to the accounting itself. This court is as much bound to respect and enforce the rights of married women under the laws of the state,

as are the state courts, but neither can go beyond the legislative intention; especially when to do so would open the door to gross frauds by failing husbands upon the rights of their creditors.

After the able argument of counsel on both sides, and the most mature consideration of the important questions presented, I am compelled to hold this conveyance fraudulent and void as to the creditors of said Theodore McKnight, who were such at the date of its execution.